**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**DEBRA J. BAKER,**

    **Plaintiff,**

v.                                                             **Case No.  8:11-CV-01080-T-27AEP**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Debra J. Baker, the Plaintiff in this case, seeks judicial review of the denial of her claim for a period of disability, Disability Insurance Benefits, and Supplement Security Income. Because the Court finds that the Commissioner of Social Security's decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

**I.**

**1.     Procedural Background**

The Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on December 16, 2006, alleging that she was disabled since May 11, 2006 (Tr. 17, 92-93). Her application was denied initially, upon reconsideration, and by the December 3, 2008 decision (the "Decision") of administrative law judge Steven Slahta (the "ALJ") (Tr. 17-25, 50-53, 55-57). The Plaintiff filed a request for review of the ALJ's Decision with the Appeals

Council ("AC") on January 8, 2009 (Tr. 11). The AC denied this request on March 21, 2011 (Tr. 1-6). The Plaintiff properly filed the instant appeal from the final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## 2. Factual Background and the ALJ's Decision

The Plaintiff was forty-seven years old at the time of the ALJ's Decision (Tr. 28- 29). The Plaintiff has high school degree and a two-year registered nursing degree, and worked as a nurse (Tr. 29). The Plaintiff alleged that she became unable to work in May 2006 because she "was having emotional problems [and] difficulties coping on the job with [her] co-workers." (Tr. 29.) The ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 11, 2006 (Tr. 19, Finding No. 2). After reviewing the medical evidence and the Plaintiff's testimony, the ALJ found that the Plaintiff had the severe impairments of cervical degenerative disc disease and bipolar disorder (Tr. 19, Finding No. 3). The ALJ further found that the Plaintiff's impairments, singly or in combination, did not meet or equal one of the listings (Tr. 19, Finding No. 4). The ALJ then determined that the Plaintiff had the residual functional capacity ("RFC") to perform light work, except with no climbing or exposure to hazards, and could perform unskilled low stress work defined as 1-2 step processes, routine and repetitive tasks, working primarily with things rather than people, and entry level (Tr. 20, Finding No. 5). The ALJ found that the Plaintiff could not perform her past relevant work (Tr. 23, Finding No. 6), but concluded, after relying on the testimony of a vocational expert ("VE"), that the Plaintiff could perform other work existing in significant numbers in the national economy (Tr. 24, Finding No. 10). Accordingly, the ALJ found the Plaintiff not disabled (Tr. 25, Finding No. 11).

## II.

In order to be entitled to SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id*. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994), *citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[1] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff challenges the ALJ's Decision on two broad grounds:

(1)     the ALJ erred in the evaluation of medical opinions; and

(2)     the ALJ erred in the evaluation of symptoms.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

For the reasons discussed below, the Court finds that the ALJ's Decision was based on substantial evidence and comported with applicable legal standards.

### 1. The ALJ's evaluation of the medical opinions

The Plaintiff makes a number of discreet arguments concerning the ALJ's evaluation of the medical opinions on record. The Plaintiff first argues that the ALJ's consideration of the Plaintiff's GAF scores, as evaluated by Dr. Rafael Beltran, M.D., is not supported by the evidence. However, the Plaintiff then contradicts her first argument by arguing that "[a] particular GAF for a person who is not working ... does not provide much information in assessing an ability to work." (Dkt. No. 14 at 15.) Indeed, a number of courts within the Middle District of Florida have concluded that GAF scores do not denote functional limitations. *See Osterhoudt v. Astrue*, Case No. 8:10-cv-336-T-TGW, 2011 WL 127129, at \*4-5 (M.D. Fla. Jan. 14, 2011) (finding that GAF scores do not constitute functional limitations); *Stottler v. Astrue*, Case No. 8:09-cv-1719-T-TBM, 2010 WL 3833679, at \*7 (M.D. Fla. Sep. 28, 2010) ("[T]he Commissioner declines to endorse GAF scores for use in the disability program as such scores lack a direct correlation to the severity requirements in the mental disorders listings. A GAF score has little or no bearing on a Plaintiff's work-related functioning, and Plaintiff has failed to demonstrate otherwise."); *Stokes v. Astrue*, Case No. 8:08-cv-1657-T-23HTS, 2009 WL 2216785, at \*7 (M.D.Fla. July 23, 2009) ("[A] GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work ... [t]hus, an opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations"). Thus, by the Plaintiff's own legal analysis, the

Plaintiff's argument that the ALJ erred in his evaluation of the Plaintiff's GAF scores is without merit.

The Plaintiff next argues that the ALJ erred in determining that there were "no significant findings" as reported by Dr. Beltran. As an initial matter, the Court notes that the Plaintiff's interpretation of the ALJ's statement, that "[n]o other significant findings were reported by Dr. Beltran," is severely flawed. Following this statement, the ALJ went on to discuss Dr. Beltran's medical records for another three paragraphs, noting in detail Dr. Beltran's medical findings. Thus, the Court construes the Plaintiff's argument as contending that the ALJ erred in improperly discounting Dr. Beltran's opinion. However, this argument is still flawed.

Generally, when determining whether a claimant is disabled, more weight should be afforded to the opinions of a treating source as opposed to a non-treating source. *See* 20 § 404.1527(d). In determining the weight to be afforded to medical opinions such as opinions of a treating source, an ALJ shall consider the examining relationship, length of the treatment and frequency of the examination, nature and extent of the treatment relationship, supportability of a medical source, consistency of the opinions, specialization of the treating source, as well as certain "other factors." *See id*. However, an ALJ is not required to explicitly address each of these enumerated factors. *Lawton v. Commissioner of Social Security*, 431 Fed.Appx. 830, 833 (11th Cir. 2011). Rather, an ALJ must provide "good cause" for rejecting a treating physician's medical opinions. *See Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent

with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir.2004); *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997).

Here, the ALJ discussed Dr. Beltran's medical findings in great detail and noted the Plaintiff's "recurrent periods of depression, anxiety, and stress." (Tr. 22.) However, as stated by the ALJ, the "treatment notes do not document any deficit of cognitive function and, on subsequent consultative examination, psychologist Dr. Hodan also found the claimant to have well-retained cognitive abilities and average intellectual functioning." (Tr. 22.) The ALJ provided Dr. Beltran's opinions limited weight since "it appears to be based primarily on the claimant's subjective complaints" and "the opinion is not supported by significant abnormal examination findings made by Dr. Beltran." (Tr. 22-23.) In support of her argument that the ALJ erred in discounting Dr. Beltran's opinion, the Plaintiff cites to numerous instances of the Plaintiff's subjective complaints as opposed to objective medical findings. The Plaintiff's analysis of the medical evidence, in this regard, is backwards. It is not the job of the ALJ to assume that the Plaintiff suffers from every alleged impairment unless a physician says otherwise. Instead, it is the Plaintiff's burden to prove that she suffers from the alleged impairments by putting forth objective medical evidence to support her claims. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.2005) ("An individual claiming Social Security disability benefits must prove he or she is disabled."). Here, the Plaintiff has not put forth examples of functional impairments that would compel a result different from the one reached by the ALJ. Further, Dr. Beltran's opinion was not bolstered by objective medical evidence on record. Thus, the Court

7

finds that the ALJ had good cause for affording Dr. Beltran's opinion limited weight, and the ALJ's Decision in this regard is supported by substantial evidence.

Next, under the heading "ALJ's Subjective Complaints Reason Not Supported by the Evidence," the Plaintiff argues that:

> The findings of Dr. Beltran, as we have just seen, are significant. Dr. Beltran made findings and expressed his opinions of his extensive experience and his knowledge of Ms. Baker. Clinical psychiatrists deal with quintessentially subjective information with respect to which they must exercise professional interpretive judgment. Matthews v. Barnhart, 347 F.Supp.2d 1093, 1101 (M.D. Ala. 2003). [sic] (An ALJ's rejection of a behavioral science doctor's opinion because it was based, in part, on a claimant's subjective complaints is made possible only by the ALJ's tacit equation of the psychiatrist's findings with plaintiff's subjective complaints, as if the doctor merely parroted them without any medical judgment or medical assessment intervening. This unstated assumption is unwarranted as a professional medical matter and unsupported by an unique facts specific to this case.) The ALJ's Decision must be reversed for this reason also.

(Dkt. No. 14 at 17-18.) The Court notes that the Plaintiff's argument in this regard is not entirely clear. The Plaintiff appears to reiterate her prior argument that the ALJ's evaluation of Dr. Beltran's opinion was inappropriate. However, since the Court has already found that the ALJ had good cause for affording Dr. Beltran's opinion limited weight, namely that Dr. Beltran's findings were not bolstered by the medical evidence on record, the Plaintiff's "ALJ's Subjective Complaints Reason Not Supported by the Evidence" argument is without merit.

The Plaintiff next argues that the ALJ failed to consider Dr. Beltran's opinion that the Plaintiff could not tolerate the side effects of most of her medication. (Dkt. No. 14 at 18.) According to the Plaintiff, "Dr. Beltran specifically found that Ms. Baker had poor tolerance for the side effects of most of her medications which caused them to be discontinued." (Dkt. No. 14

at 18.) While it is true that Dr. Beltran noted in an April 2008 report that the Plaintiff had a "poor tolerance" for her medications because of side effects, the Plaintiff's interpretation of this singular treatment note is flawed. In other treatment notes in the preceding months, Dr. Beltran identified a number of medications that the Plaintiff was prescribed that had varying effects on the Plaintiff's symptoms. (Tr. 350-358.) Further, during the administrative Hearing, which took place after Dr. Beltran's April 2008 report, the Plaintiff stated that she was currently taking a number of medications, including Trileptal, Oxcarbazepine, Klonopin, Clonazepam, and Trozadone. (Tr. 35.) Lastly, and perhaps most importantly, the Plaintiff has failed to identify why Dr. Beltran's singular treatment note regarding the Plaintiff's response to medication should compel a finding of disability by the ALJ. Thus, the Court finds that the Plaintiff's argument is without merit.

Next, the Plaintiff argues that the ALJ erred by improperly rejecting the medical opinion of Nancy Warren, a licensed clinical social worker. In his Decision, the ALJ stated that "[s]ome consideration, but only little weight is given to [Therapist Warren's] opinion, as a mental health therapist is not an acceptable medical source under the regulations." (Tr. 23.) Under the Social Security regulations, a licensed social worker does not qualify as an "acceptable medical source," 20 C.F.R. § 404.1513(a), and cannot establish the existence of a medically determinable impairment. *See* SSR 06-03p. However, Social Security Ruling 06-03p further points out that "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs," medical sources, such as licensed clinical social workers, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by

physicians and psychologists." SSR 06-03p.  Therefore, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id*.  Courts have thus found that an ALJ commits reversible error when he or she completely ignores and fails to mention such sources. *See Williams v. Astrue*, Case No. 3:07-cv-541, 2008 WL 1930619 at *2 (M.D. Fla. Apr.30, 2008) (reversing for error where an ALJ disregarded the opinion of a chiropractor simply because it was not an "acceptable source of medical evidence"); *Reliford v. Barnhart*, 444 F.Supp.2d 1182, 1188 (N.D. Ala. 2006) (finding it "improper and unreasonable" for ALJ to reject opinions of treating physical therapist due to his not being acceptable medical source); *O'Connor v. Barnhart*, Case No. C03-3081-MWB, 2004 WL 2192730 at *5 (N.D. Iowa Sept. 28, 2004) ("ALJ is not free to disregard the opinions of health care professionals simply because they are not medical doctors."). However, here, the ALJ considered and discussed Ms. Warren's opinions, but chose to afford her opinions little weight. (Tr. 23.)  Since the ALJ was under no obligation to afford Ms. Warren's opinions significant weight, the ALJ did not err in his evaluation of Ms. Warren's opinions.

The Plaintiff also argues that the ALJ improperly rejected certain aspects of Dr. Hodan's medical opinions, namely "Dr. Hodan's opinion that her rapid cycling and easy irritability jeopardizes her ability to maintain employment." (Dkt. No. 14 at 21.)  The ALJ afforded significant weight to Dr. Hodan's opinions with respect to the Plaintiff's ability to perform simple work tasks. (Tr. 23.)  However, the ALJ found that other portions of Dr. Hodan's opinion concerning the Plaintiff's demeanor were "speculative and based primarily on the claimant's

subjective complaints not on objective examination findings." (Tr. 23.) Indeed, there is medical evidence on record from the Plaintiff's treating physician, Dr. Beltran, supporting that the Plaintiff's mood was stabilized when she was compliant with her medication. (Tr. 22, 189, 198-99.) Further, Dr. Hodan only saw the Plaintiff one time in a psychological evaluation setting, as opposed to several times as a treating physician. Thus, the Court cannot consider Dr. Hodan's observations regarding the Plaintiff's mood and demeanor as constituting substantial evidence that would compel a contrary decision. *See Kent v. Sullivan*, 788 F.Supp. 541, 544 (N.D. Ala.1992) ("[T]he report of a consulting physician who examined claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician.").

Lastly, the Plaintiff argues that the opinions of two non-examining sources should be given little weight since they are not consistent with the treating record. (Dkt. No. 14 at 21.) "This also requires reversal." (Dkt. No. 14 at 21.) Once again, the Plaintiff has failed to articulate a legal basis for reversal. The Plaintiff does not cite to the ALJ's Decision and the Court will not speculate as to how the Plaintiff intends to challenge the evaluation of these contested non-examining source opinions. Thus, this "argument" is without merit.

### 2. The ALJ's evaluation of the Plaintiff's symptoms

The Plaintiff also challenges the ALJ's Decision on the basis that the ALJ did not consider all of the symptoms of the Plaintiff's mental illness including her inability to tolerate the side effects of her medication. (Dkt. No. 14 at 22.) "The ALJ must evaluate the record as a whole, and must address the facts, not cherry-pick," the Plaintiff asserts. (Dkt. No. 14 at 22.)

Specifically, the Plaintiff argues that the ALJ erred in his discussion of progress notes from mental health counselor Nancy Warren, ignoring "two entries [documenting] an emergency visit of inability to cope and thinking of committing suicide with decreased sleep and increased conflicts with others (a classic bipolar manic phase)." (Dkt. No. 14 at 22.)  While the Plaintiff asserts that the ALJ has cherry-picked the record in his analysis of the evidence, it is the Plaintiff who has cherry-picked what progress notes to discuss in her memorandum.  While there is indeed an undated progress note documenting that the Plaintiff was "very depressed," suffered from "lots of stress," and had "suicidal thoughts," the previous two progress notes in the record from January and March 2008 state that the Plaintiff's "mood and affect are good," and that the Plaintiff was "doing very well."   (Tr. 363-64.)  Overall, for four months of progress notes, three of those months document generally positive mental examinations.  The ALJ was well within his discretion to discount the negative findings of the Plaintiff's mental health counselor in light of the general positive findings during the other three months.  However, contrary to the Plaintiff's assertions, the ALJ did indeed acknowledge that Ms. Warren's progress notes documented "recurrent periods of depression, anxiety, and stress ...." (Tr. 22.)  The ALJ's analysis of these contested records is thus sound and reasonable.  Further, after a thorough review of the medical evidence in conjunction with the ALJ's Decision, the Court finds that the ALJ's Decision is based on substantial evidence and the ALJ did indeed consider the record as a whole, including the Plaintiff's mental health symptoms.  Therefore, the Plaintiff's argument is without merit.

## IV.

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

(1)     The decision of the Commissioner be **AFFIRMED**; and

(2)     The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on this 20th day of August, 2012.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc)*.

Copies furnished to:

Hon. James D. Whittemore

Counsel of Record